UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TODD C. HUGHES,

    Petitioner,

v.                                          CASE NO: 8:08-CV-492-T-30TGW

SECRETARY, DEPARTMENT OF
CORRECTIONS, et al.,

    Respondents.
_____/

## ORDER

Petitioner, an inmate in the Florida penal system proceeding *pro se*, (hereinafter referred to as "Petitioner" or "Hughes"), brings this petition for writ of habeas corpus pursuant to 28 U.S.C. §2254 (Dkt. #1). The Court has considered the petition, Respondents' response (Dkt. #12) and Petitioner's reply (Dkt. #24). Upon review, the Court determines that the petition must be denied because it fails to meet the requirements of 28 U.S.C. §2254(d) and (e).

## BACKGROUND

Petitioner seeks relief from his convictions for sexual battery, kidnapping, attempted sexual battery, and aggravated battery in the state circuit court in Pinellas County, Florida. On September 8, 2000, one week before the scheduled jury trial, a hearing was held which Hughes' counsel described as a pre-trial conference. Hughes' counsel, Mr. Olney, stated:

> There's never been an offer made in this case, and after I make my presentation and the State rebuts it with regard to a downward departure, if it's necessary, then we will go forward to try to come up with an offer from the court with regard to sentencing.

Exhibit 2, p.3.

According to Mr. Olney, the guidelines for the charged crimes called for a sentence between 23.81 to 39.68 years. The maximum sentence was life imprisonment. In fact, each of Hughes' two co-defendants had been given a separate trial, convicted by a jury, and sentenced to life imprisonment.

Mr. Olney and the assistant state attorney each made their presentations to the court concerning the facts and an appropriate sentence. The State contended that, if a trial were held and Hughes convicted like his co-defendants, the State would seek a sentence of life imprisonment. Mr. Olney then stated:

> Mr. Davidson has placed them on the record, all the reasons that justify an offer from the court for a plea. We've got a long, long trial scheduled next week. My client does hope to put this behind him and would like to have an offer from the court. The State is suggesting 30 years.

Exhibit 2, pp. 22-23.

The court considered the arguments of counsel and offered Hughes a sentence of 25 years imprisonment on each of the two first degree felony charges to run concurrently with each other and 15 years on each of the second degree felony charges to also run concurrent with the first degree felony charges. Hughes had several friends and family members in the audience in case their testimony was requested at the hearing. The court said to them:

I am going to give Mr. Olney a chance to talk to Mr. Hughes, and I wanted him to have the opportunity to deal with Mr. Hughes directly and to be advised of what my decisions are before announcing them publicly.

Exhibit 2, p.23. A recess was granted during which Hughes and his counsel discussed the plea offer, after which the following was stated in open court:

> MR. OLNEY: Your Honor, may we approach just to go over the plea form and make sure that we have everything down?
>
> THE COURT: Yes, sir.
>
> (WHEREUPON AN OFF-THE-RECORD DISCUSSION WAS HAD)
>
> MR. OLNEY: Your Honor, before the Court in Case NO. 97-20414CFANO is Todd Hughes. With the dispositional understanding that the Court will sentence him to 25 years in the Department of Corrections on each of the first degree felonies, concurrent with each other and concurrent with the other charges.
>
> With the dispositional understanding that the Court would sentence him to 15 years in the Department of Corrections, concurrent each with each other and with the first degree felony charges and the two second degree felony charges, and with the client receiving credit for any time that he has previously served and with the Court imposing court costs in the amount of $408 and restitution and costs to be determined as liens in the future, my client, after going over the plea form, is prepared to withdraw his previously entered pleas of not guilty and tender to the Court pleas of no contest.
>
> I've gone over the plea form with him. He's prepared to initial page 1, and he's prepared to sign page 2 at this time.
>
> THE COURT: Okay. Have you had the opportunity, Mr. Olney, to discuss the fact that Mr. Hughes will be designated a sexual predator under the statute by virtue of the offenses to which he's pleading and also that there may possibly be Jimmy Ryce considerations at some point?
>
> MR. OLNEY: Yes, your Honor, I have. We have had ample discussions in that regard. He understands that the statute does apply to him and that he would be screened on his imminent release, and I've explained to

him the considerations that are in effect at this time and that, you know, that that is a matter for another time and another day.

THE COURT: And did you discuss the obligation for the DNA sample?

MR. OLNEY: Yes, I have.

THE COURT: Okay, Mr. Davidson, is there anything further on the factual basis that I needed to hear?

MR. DAVIDSON: Your Honor, I don't believe so other than the fact that these offenses involved as described did occur here in St. Petersburg, Pinellas County, Florida; that they occurred on November 14th of 1997, and on or about or between that and November 15th of 1997.

And the Court has heard from the defense its theory as to the defendant not being an active participant in at least one if not more counts. It is the State's position that at trial we would be able to come forth with sufficient evidence for a finding of guilt as to each and every count would be sustained by a jury's finding that the defendant was a principal to those actions.

THE COURT: Okay. Thank you. Mr. Olney, is there any lawful basis why I should not impose sentence at this time?

MR. OLNEY: No, sir, there is not. I know that my client would like the Court's permission to simply turn and address the crowd briefly with very brief remarks after the Court has imposed sentence.

THE COURT: Okay.

Exhibit 2, pp. 25-28.

The court then conducted a thorough plea colloquy, found that the plea was entered freely, knowingly, and voluntarily, and accepted Hughes' no contest plea. The court then imposed the sentences agreed upon in the written plea agreement.

Hughes filed a direct appeal plus several post-conviction motions. The procedural history will not be repeated since it appears the petition is timely and the State does not dispute exhaustion of the grounds raised here.

## STANDARD OF REVIEW

### A. AEDPA

Since Petitioner's conviction was entered after the enactment of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), his petition is subject to the provisions thereof. When a federal court is asked to review a criminal conviction from state court, 28 U.S.C. § 2254 places a heavy burden upon the petitioner. Habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim resulted in a decision that:

> (1)   was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or
>
> (2)   was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d); <u>Williams v. Taylor</u>, 529 U.S. 362 (2000); <u>Mitchell v. Esparza</u>, 540 U.S. 12 (2003).

In <u>Mitchell v. Esparza</u>, the Supreme Court explained that a state court's decision is "contrary to" the Supreme Court's clearly established law if it "applies a rule that contradicts the governing law set forth in our cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of this court and nevertheless arrives at a result different

from our precedent." Mitchell, citing Williams v. Taylor, 529 U.S. 362, 405-406 (2000).

As to the issue of whether a state court has made "an unreasonable determination of the facts in light of the evidence," the state court's determinations of fact are presumed to be correct and the habeas petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

### B. Ineffective Assistance of Counsel

Four of Petitioner's six grounds claim ineffective assistance of counsel. Where a claim of ineffective assistance of counsel is made, a petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). Deficient performance is performance which is objectively unreasonable under the prevailing professional forms. Id. at 688. Prejudice results when there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. The Eleventh Circuit has held that "[w]hen applying Strickland, we are free to dispose of ineffectiveness claims on either of its two grounds." Oats v. Singletary, 141 F.3d 1018, 1023 (11th Cir. 1998). "To state the obvious: trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable. But the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc) (quoting Burger v. Kemp, 483 U.S. 776 (1987)).

Under Strickland, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." Waters v. Thomas, 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc) (quoting Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994)).

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

White v. Singletary, 972 F.2d 1218, 1220-21 (11th Cir. 1992).

## **DISCUSSION**

Hughes raises the following six grounds for relief:

**Ground One:** Trial counsel rendered ineffective assistance for failure to investigate the facts and advise of defenses, and for coercing the plea.

**Ground Two:** Trial counsel rendered ineffective assistance by failing to assure there was an adequate factual basis for the charges.

**Ground Three:** Trial counsel rendered ineffective assistance by failing to object to prosecutorial misconduct.

**Ground Four:** Trial counsel rendered ineffective assistance for failing to advise Petitioner of potential civil commitment actions.

**Ground Five:** Petitioner's sentence was impermissibly enhanced beyond the statutory maximum when victim injury and sexual penetration points were added to the scoresheet determination, where the relevance and proof of these points were neither admitted to by Petitioner or proven by a jury beyond a reasonable doubt.

> **Ground Six:** Petitioner is actually innocent of the kidnapping, sexual battery, and attempted sexual battery crimes because his due process rights to a fair and adequate determination of his innocence have been violated by the Florida courts.

Each ground will be discussed in turn.

> **Ground One:** Trial counsel rendered ineffective assistance for failure to investigate the facts and advise of defenses, and for coercing the plea.

In support of ground one, Hughes argues:

> Counsel was aware of facts and testimony exculpating Petitioner in certain charged crimes, yet failed to investigate and develop these areas for trial preparation. Specifically, Counsel was aware of changes in testimony between the State's main witness, Petitioner's paramour, from her deposition testimony, and then later trial testimony at Petitioner's co-defendants' trials. Additionally, the victim of this crime never directly implicated Petitioner in any of the actions resulting from the Sexual Battery, Kidnapping, or Attempted Sexual Battery charges. Relevant State of Florida case law exempts Petitioner from these crimes or as a principal thereto. Through all of this, counsel did not investigate nor did he attempt to investigate these items.
>
> Counsel rendered misadvice about Petitioner's chances at trial and possible sentence(s) that he faced if convicted. Counsel specifically told Petitioner that he would receive a life sentence if he proceeded to trial. Counsel advised Petitioner to abscond the Court's jurisdiction to allow sufficient time to pass to temper the situation. Furthermore, Counsel coerced Petitioner's change of plea from Not Guilty to No Contest through the threat of harsher punishment if Petitioner proceeded to trial.

Petition (Dkt. #1), p.13.

At the outset, the Court notes that Petitioner has not identified any particular testimony or facts that his lawyer failed to investigate. He just makes general conclusory statements, repeating his contention that he was not "implicated" in three of the crimes for which he was charged: sexual battery, kidnapping, and attempted sexual battery. By

pleading guilty, Hughes waived all claims of ineffective assistance of counsel except those that involve the knowing and voluntary nature of his guilty plea. Wilson v. United States, 962 F.2d 996 (11th Cir. 1992).

Hughes had sat through both trials of his two co-defendants and was well aware of the facts and testimony he was facing. The co-defendants were found guilty in their separate trials and both were sentenced to life imprisonment. He points to no particular fact that would change the result in his case other than claiming, as did his lawyer in the September 8th hearing, that he was not an active participant in some of the crimes.

The State is correct in its response that the state court properly addressed this issue:

> In his first claim, the Defendant argues that his counsel "fail[ed] to fully and adequately conduct a pre-trial investigation as to the facts of the case and the defenses available before coercing his client to change his 'not guilty' plea" (sic). The Defendant argues that he would not have changed his plea to no contest had his attorney adequately investigated the case and fairly informed him of the problems the State would face in getting convictions for the sexual battery and kidnaping counts. In support of this claim the Defendant points to portions of pretrial depositions and trial testimony from his two separately-tried accomplices, the victim and a witness to suggest that "there was no evidence [][that the Defendant] participated, aided or abetted the sexual battery on [][the victim] ... Likewise, there was no evidence to support a conviction for kidnaping." The Court disagrees.
>
> During the argument for a downward departure from the sentencing guidelines, the Defendant's trial counsel stated that through all the testimony elicited, including that from the two trials of the Defendant's confederates, there was no evidence that his client had any active participation in the sexual battery. Exhibit 1, transcript Motion for Downward Depart, September 8, 2000, at 6-7 & 20-21. Additionally, the attorney argued that

the Defendant's participation in regard to the kidnapping charge was minimal; that the Defendant's actions were limited to:

> "standing at the door with his girlfriend when the ... victim came to the door to and asked the girlfriend to let him leave. The testimony has been, I think in every trial and in every instance, that she put her finger on his chest and pushed him back into the room while my client stood next to her."

Exhibit 1, at 7. For support of his assertions regarding his client's lack of involvement, the trial counsel directed the Court's attention to "the numerous deposition transcripts and trial transcripts in both my client's cases and in the codefendants (sic) cases." Exhibit 1, at 9. It is apparent the trial counsel was familiar with the information in those transcripts. The testimonies that the Defendant now summarizes to show how unfamiliar trial counsel was to the facts are very similar to the information that was brought out during the hearing on the Motion for Downward Departure. From reviewing the motion hearing transcript, it is obvious that the trial counsel was well versed in all of the facts concerning his client's involvement with the events of November 14-15, 1997. Exhibit l, at 4-ll & 18-23.

Notwithstanding his assertion that there was "no evidence" for the convictions, the Defendant also states that the sexual battery and the kidnaping counts "would be *unlikely* to result in guilty verdicts" had the Defendant proceeded to trial (emphasis added). The Defendant argues that in accordance with Walker v. State, 604 So. 2d 475 (Fla. 1992) and Faison v. State, 426 So. 2d 963, 965-66 (Fla. 1983), any restraining done by him was merely incidental to the other crimes charged and would not support a kidnapping conviction. In Walker, the Florida Supreme Court reiterated the three-prong test from Faison for "determin[ing] whether movement or confinement during the commission of another felony is sufficient to justify an additional conviction for kidnaping." Walker, at 477. The Defendant argues that if the trial counsel had reviewed this case law, "he could have advised his client that ... [the Defendant's

action] is not kidnaping." While not agreeing that the restraint applied by the Defendant was "merely incidental to other crimes charged," the Court notes that the Defendant's reliance on Walker and Faison is misplaced. The Defendant was charged with kidnapping contrary to § 787.0l(l)(a)3. Florida Statutes. Exhibit 2, Amended Felony Information. The criteria from Faison do not apply to the Defendant's charge. Bedford v. State, 589 So. 2d 245, 251 (Fla. 1991) ("Our decision in Faison v. State, ... has no application here [to a charge under § 787.01(l)(a)3.]"); Sutton v. State, 834 So. 2d 332, 334 (Fla. 5th DCA 2003) ("the standard adopted in Faison does not apply to offenses charged under section 787.01(1)(a)3.); Biggs v. State, 745 So. 2d 1051 (Fla. 3d DCA 1997) ("the Faison test *only* applies to subparagraph 2") (emphasis in original).

The Defendant asserts that he thought that life imprisonment was a foregone conclusion if he went to trial. Apart from noting that the Defendant does not allege that his counsel gave him misadvice concerning his possible prison sentence, the Court finds that this claim is incredible. While arguing the Motion for Downward Departure, the trial counsel stated that life was only a "possibility." Exhibit 1, at 8. In arguing its position, the State expressed that if successful at trial that it only "anticipated" a life sentence against the Defendant, and that the State would then have to "seek[] an upward departure of a life sentence." Exhibit 1, at 12. During the plea colloquy, the Court also informed the Defendant that the first degree felonies were punishable "up to" life in prison. Exhibit 1, at 30. Any misconception by the Defendant that he would automatically receive life imprisonment if convicted at trial was corrected during the hearing.

The Defendant also states that he would not have changed his not guilty plea "had he been informed that the Sentencing Guidelines range ... would not change whether he pled to the charges or whether he was convicted by a jury." The Defendant's counsel *does not* point to any authority that suggests that this sort of omission by defense counsel constitutes ineffective assistance of counsel and the Court finds none. The Court also does not see how the defense counsel's failure to tell his client that the sentencing guidelines are the same whether he

> proceeds to trial or accepts a plea falls "below an objective standard of reasonableness" expected from a reasonably competent attorney. The Defendant has not shown the first part of the <u>Strickland</u> test for ineffective assistance of counsel and this claim is denied.

(Exh 8 at pp. 2-4). Since the state court properly applied federal law, federal habeas relief is not available as to this part of the claim.

As to Hughes' claim that he was coerced into changing his plea, his statements under oath before the state court show otherwise. Hughes was asked the following questions and gave the following answers under oath during his change of plea colloquy:

> Q. Okay. Have you had enough time to discuss this with Mr. Olney?
>
> A. Yes, sir.
>
> Q. Do you have any questions about your plea or the proceedings today?
>
> A. I don't believe so, no.
>
> Q. Okay. Are you satisfied with your attorney's representation in this matter?
>
> A. Yes.
>
> Q. Has anyone promised you anything other than what you've heard discussed here today to get you to enter the plea?
>
> A. No.
>
> Q. Has anyone threatened you in any way?
>
> A. No.

Exhibit 2, pp. 29-30. Hughes will not now be heard to refute the statements he made under oath in open court.

**Ground Two:** Trial counsel rendered ineffective assistance by failing to assure there was an adequate factual basis for the charges.

In support of ground two, Hughes argues:

> The acceptance of any plea requires that the sentencing Court determine that the plea is not only freely and voluntarily made, but that there is sufficient evidence available to convict the defendant if the case were to proceed to trial. There was insufficient evidence presented by the State of Florida to support a conviction for the Sexual Battery charge, the Kidnapping allegation, or the Aggravated Battery charge placed against Petitioner. Although Petitioner stood charged under the "principal theory" of Florida law, the State admitted that evidence was lacking to support certain allegations. Counsel's failure to object to this lack of factual basis has resulted in Petitioner pleading no contest to charges that he is either actually or factually innocent of committing.

Petition (Dkt. #1), p.14.

The State responded that the state court did not misapply federal law in addressing this issue. Hughes, in his Reply, takes issue with that position and asserts that the factual basis before the Court was insufficient to support his conviction on the charges. Specifically, he argues:

> In this respect, the record evidence reflects that Petitioner's counsel was ineffective because the State Attorney, by his own assertion, specifically stated that there is not much evidence pointing to Petitioner's guilt on the sexual charges. It is reasonable, under this condition, to hold that counsel was aware of the same lack of evidence against the Petitioner.

Petitioner's Reply (Dkt. #24), p.16.

Hughes misstates the record. There were adequate facts in the record before the Court that would support Hughes' conviction as a principal. In addressing this issue, the state court said:

> The Defendant next claims he received ineffective assistance by his counsel's "failure to object to an inadequate factual basis to support the plea to crimes for which his client was to be adjudicated guilty." The Defendant claims there was no factual basis that he had any active part in the sexual battery; that concerning the kidnaping, he was not the one that prevented the victim from leaving; and, that he had no part in the aggravated battery or attempted sexual battery. The Court disagrees.
>
> The Court heard that the Defendant was the instigator in the events of November 14-15, 1997; that the Defendant held the victim's arms back; that an accomplice then urinated on the victim and slapped his penis in the victim's face in an attempt to get the victim to perform fellatio; that the Defendant was present when the victim was anally raped with a bottle; that the Defendant brought his dog to the apartment and allowed his dog to be sicced on the victim; that the Defendant beat the victim with his fists; that the Defendant stood with his girlfriend in the doorway when the victim pleaded to be allowed to leave; and, that the whole event started because another person came to the Defendant and wanted him to evict the victim so that the other person could resume renting the victim's apartment from the Defendant. Exhibit 1, at 5-7, 11, & 13-19. In all counts the Defendant was charged as a principal in the first degree. Because the Defendant aided and abetted his accomplices, he could be found guilty as if he had done each himself. § 777.011 Fla. Stat.; Clifford v. State, 518 So. 2d 983 (Fla. 2d DCA 1988). The Court finds the facts presented at the motion and change of plea hearing were sufficient to find that the Defendant actually perpetrated the crimes charged or aided and abetted his accomplices' commission of the crimes. Staten v. State, 519 So. 2d 622, 624 (Fla. 1988) ("to be guilty as a principal for a crime physically committed by another, one must intend that the crime be committed and do some act to assist the other person in actually committing the crime").

Respondents' Response (Dkt. #12), pp. 17-18.

The state court did not misapply federal law in rejecting this ground. It will therefore be denied here.

**Ground Three:**   Trial counsel rendered ineffective assistance by failing to object to prosecutorial misconduct.

In support of ground three, Hughes argues:

> Petitioner entered an "open plea" arrangement with the Court and had agreed to a 25 year cap on his sentence. The Court was then to determine an appropriate sentence basic on statutory mitigating factors that existed. At this hearing, the State presented prejudicial allegations of Petitioner's character and culpability that was not supported by any evidence and made assertions on the record that were wholly incorrect regarding aggravating factors that did not exist. Counsel for the Petitioner failed to object to the State's improper representation of the facts and further failed to clarify the actual course of events and evidence to the Court.

Petition (Dkt. #1), p.15.

Contrary to his assertion, Hughes did not enter an "open plea." He bargained for a specific sentence. The state court sentenced him as agreed to 25 years on the two first degree felonies to run concurrent and 15 years on the two second degree felonies to run concurrent with the first degree felonies.

Furthermore, Hughes does not point to any particular statement that he now claims to have been a misrepresentation on the part of the prosecutor. General conclusory statements are insufficient to support a claim for habeas relief. If this ground is intended to refer to the same statements that Hughes identified in his post-conviction motion, they are adequately addressed by the state court as follows:

> The Defendant argues that his trial counsel was ineffective when he did not object and clarify the record at the

hearing for a downward departure when the State "persisted in knowingly misstating facts." For support, the Defendant points to three separate statements by the State attorney.

The first of these statements is that "there's not been a lot of evidence showing Mr. Hughes' participation in the actual bottle sexual battery." The Defendant argues trial counsel should have clarified that there was "no evidence at all." The Court notes that the Defendant fails to include the statement immediately following the quoted text, that is "that [][the Defendant] was in the doorway, that's what the witnesses will indicate." <u>Exhibit 1</u>, at 13.

Second, pointing to the passage concerning the attempted sexual battery where the Court heard that the Defendant held the arms of the victim behind his head while an accomplice attempted to have the victim perform oral sex on him, the Defendant asserts here that it should have been explained that as soon as the accomplice started to make something sexual out of the assault, the Defendant let go of the victim's arms and walked to the doorway. The Court notes, that the State was clear that it was an accomplice that placed his penis in the victim's face and the one that actually placed the bottle into the victim's anus; however, the Defendant was still in the room during the incident. <u>Exhibit 1</u>, at 15-16.

Third, pointing to the passage concerning the Defendant's presence "at the doorway with his girlfriend ... when the victim pleaded with them to let him out of the room, and that was not allowed", the Defendant argues that in actuality the victim was pleading to the girlfriend and not to him and that it was the girlfriend that put her finger on the victim's chest pushing him back into the room. Whether the victim pleaded with the Defendant's girlfriend and the Defendant, or to just the girlfriend while the Defendant stood beside her is inconsequential. Arguably, the victim pleaded with the girlfriend as the Defendant had already beaten the victim and otherwise assisted his accomplices in the crimes, and the Defendant's presence beside his girlfriend increased her apparent authority. The Court also notes that the trial counsel had already stated to the Court that it was the girlfriend who the victim pleaded with

> and who pushed the victim back into the room with her finger. Exhibit 1, at 7.
>
> The Court finds in reviewing the complete statements that the State did not misrepresent the facts to the Court. Reviewing all of the statements made at the motion for a downward departure, the Court was aware of the Defendant's level of participation in the events. The Defendant has not shown deficient performance by his trial counsel's not objecting to the mentioned statements, and he has also not shown a reasonable probability that the motion would have resulted differently had he objected to these statements. This claim is denied.

Exhibit 8, pp. 7-8.

The state court made a finding of fact that the prosecutor had not made any misrepresentations before the court. The record evidence is sufficient to support that factual finding and this Court is bound thereby. Therefore, this ground will be denied.

**Ground Four:**   Trial counsel rendered ineffective assistance for failing to advise Petitioner of potential civil commitment actions.

The record clearly refutes this ground. As discussed in the Background section of this Order, Hughes was clearly advised by his counsel of his potential civil commitment under Florida's Jimmy Ryce Act. Therefore, since this claim is factually incorrect, it will be denied.

**Ground Five:**   Petitioner's sentence was impermissibly enhanced beyond the statutory maximum when victim injury and sexual penetration points were added to the scoresheet determination, where the relevance and proof of these points were neither admitted to by Petitioner or proven by a jury beyond a reasonable doubt.

In support of ground five, Hughes argues:

> At the time of Petitioner's offense, the State of Florida's sentencing scheme called for the preparation of a guidelines scoresheet in order to determine the appropriate sentence of a defendant based on a *point* system where one point was equal to one month of incarceration.
>
> On this scoresheet there was a section entitled "Victim Injury" where additional points could be scored to extend, or enhance, a defendant's sentence beyond what the 'normal' scoring called for as a sentence. In Petitioner's case an additional 160 points were scored for victim injury, sexual penetration, and sexual contact. This effectively added over 13 years to any possible sentence Petitioner could receive from the Court.
>
> * * *
>
> Because the imposition of these points increased Petitioner's sentence beyond the Statutory maximum, Petitioner's sentence is illegal and violative of Constitutional concerns under the United States Supreme Court decision in *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) and *Blakely v. Washington*, 542 U.S. 296 (2004).

Petition (Dkt. #1), pp. 18-19.

Hughes' argument is misplaced. The Apprendi line of reasoning does not apply because Hughes bargained for a specific sentence. Under federal law, a sentencing court may accept plea agreements in which the parties stipulate to a specific sentence, or to sentencing enhancements, that would otherwise be outside the sentencing guidelines. United States v. Goodall, 236 F.3d 700 (D.C. Cir. 2001); United States v. Bernard, 373 F.3d 339 (3d Cir. 2004) (a sentencing court has the authority to accept a plea agreement stipulating to a sentencing factor or a provision of the sentencing guidelines that otherwise would not apply, or specifying a sentence that falls outside the applicable guidelines' range). In Hughes' case, the sentencing court was not required to determine whether the facts before it supported any particular enhancement because Hughes agreed to the specific sentence he received.

Further, <u>Apprendi</u> is only concerned with a fact that increases a penalty beyond the prescribed statutory maximum. Here, the statutory maximum was life imprisonment. His sentence did not exceed the statutory maximum. The top of a sentencing guideline range is not the maximum sentence a judge may give unless that guideline range is mandatory. If a guideline range is merely a recommendation, and a sentencing court has the discretion to exceed it, it is not a prescribed maximum. <u>Blakely v. Washington</u>, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed. 2d 403 (2004). Hughes has not contended that Florida's sentencing guidelines are mandatory. Absent that contention, this Court declines to explore the mandatory/discretionary nature of Florida's sentencing guidelines.

For the foregoing reasons, this claim fails.

**Ground Six:** Petitioner is actually innocent of the kidnapping, sexual battery, and attempted sexual battery crimes because his due process rights to a fair and adequate determination of his innocence have been violated by the Florida courts.

Once again, Hughes argues there was insufficient evidence to show he was an active participant in the crimes charged. And he argues, as did his attorney at the time of his sentencing, that his involvement was relatively minor as compared to his confederates. This argument was addressed in ground one above where this Court determined that the evidence was sufficient to convict Hughes as a principal in all crimes charged. The state court did not misapply federal law, or violate Hughes' federal constitutional rights, by accepting his plea of no contest and sentencing him to the specific sentence he bargained for. Therefore, this ground fails.

## CONCLUSION

Having determined that all six grounds failed to meet the threshold requirements of 28 U.S.C. § 2254(d) and (e), this Court will deny the petition.

It is therefore ORDERED AND ADJUDGED that:

1. The petition for writ of habeas corpus (Dkt. #1) is DENIED.

2. The Clerk is directed to enter judgment in favor of Respondents and against the Petitioner, terminate any pending motions, and close this file.

**DONE** and **ORDERED** in Tampa, Florida on December 10, 2009.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies Furnished To**:
Counsel/Parties of Record

*F:\Docs\2008\08-cv-492.deny 2254*